# MURPHY ROSEN LLP.

ATTORNEYS AT LAW

100 Wilshire Boulevard
Suite 1300
Santa Monica, CA 90401
Phone 310.899.3300
Fax 310.399.7201
MurphyRosen.com

September 8, 2017

The Honorable Loretta A. Preska
Senior United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street
New York, New York 10007

  Re: *Steven Ferdman v. Just Jared Inc.*, **Case No. 17 Civ. 1283 (LAP)**

Your Honor:

  At the conclusion of the Court's August 2, 2017 Initial Pretrial Conference ("IPC"), you suggested that the parties informally exchange certain information, explore the issue of settlement, and if the case did not settle, summarize in a letter to you the parties' current positions. We do so below.

  A. **Defendant's Position**

  Plaintiff Steven Ferdman is a photographer who was hired by Sony Music to take pictures at a marketing event involving singer John Legend. The event was sponsored by a company that imports a popular brand of vodka called Belvedere. Plaintiff was paid $500 for his services. Belvedere's public relations company, Mission Media USA, Inc. ("Mission") received copies of these pictures from Plaintiff and forwarded some of them—unsolicited—to defendant Just Jared, for the express purpose of requesting Just Jared to post the photos on its website about the event and use the pictures. Just Jared is an online celebrity website which receives these types of requests every day. In these circumstances, the public relations company is the party responsible for obtaining from the photographer the necessary authorization to freely pitch to media outlets with the goal of publicity, typically for the sponsor and/or the performing artist. In this instance, Just Jared agreed to publicize the event and use the pictures. Plaintiff claims that Mission was not authorized to pitch the pictures to media outlets, and that therefore Just Jared's use of the pictures was unauthorized and violated Plaintiff's copyright.

  During the IPC, counsel for Just Jared Inc. informed the Court that while no discovery had yet been taken, Just Jared's understanding was that, at best, this was a case of accidental copyright infringement and that, in any event, Plaintiff's damages were no more than a few

**MURPHY ROSEN** LLP.

**ATTORNEYS AT LAW**

The Honorable Loretta A. Preska
September 8, 2017
Page 2

hundred dollars.  In response, Plaintiff's counsel stated that this was in fact an intentional infringement case and that the Plaintiff typically received licensing revenues from pictures like these that collectively would have totaled tens if not hundreds of thousands of dollars.  Your Honor then made the sensible suggestion that the parties exchange their evidence to support their relative positions.  While not limiting the evidence to be exchanged, Your Honor specifically suggested that Plaintiff produce examples of comparable "low, middle and high" licensing agreements so that Just Jared could test the veracity of Plaintiff's damages claim.  In turn, the Court suggested that Just Jared produce evidence establishing its lack of intent.

Plaintiff ultimately produced some underlying emails, an invoice from Sony, copyright registrations, and three invoices showing "low, middle and high" license fees.  The license fees are in pounds, but converted to dollars, Plaintiff's net per picture license fees range from a low of 27 cents to a high of $39.96.

Just Jared produced some underlying emails, as well as emails between Plaintiff and Mission where Plaintiff forwarded the pictures to Mission.  In that email exchange, Mission attempts to build excitement for the event "with images and details" while encouraging Just Jared to "share in today's coverage."  (Exhibit A.)

The evidence exchanged to date confirms the following: (a) Plaintiff's forwarding of the pictures to Mission under these circumstances was an implied license for Mission's use, which means Just Jared's use of the pictures at Mission's urging does not constitute copyright infringement (Exhibit B)—*see I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996) (implied license is based on objective, not subjective, evidence of party's intent); (b) Mission's actions and emails confirm that it believed it was authorized to use the pictures and Just Jared had no reason to question that belief; thus, to the extent the Plaintiff can prove some form of copyright violation, it is at best unintentional (Exhibit C); (c) Plaintiff was paid $500 for his services (Exhibit D), and (d) the range of per picture license fees ranges from 27 cents to $39.96 (Exhibit E).  Taking the highest value for all eight pictures, Plaintiff's damages are $319.68.

At this juncture, Just Jared's offer of judgment in the amount of $6,400 is not just fair but generous in light of the six factors enumerated by the Second Circuit in *Bryant v. Media Rights Productions, Inc.*, 603 F.3d 135, 144 ("When determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and

**MURPHY ROSEN** LLP.

**ATTORNEYS AT LAW**

The Honorable Loretta A. Preska
September 8, 2017
Page 3

attitude of the parties."). Plaintiff's email exchange with Mission shows him actively sending these pictures to a PR firm with no stated restrictions. If not an express license, it is at worst an implied license. <u>See Wilchombe v. TeeVee Toons, Inc</u>., 555 F.3d 949, 956 (11th Cir. 2009) (In determining whether an implied license exists, a court should look at objective factors evincing the party's intent, including deposition testimony and whether the copyrighted material was delivered "without warning that its further use would constitute copyright infringement."). If the Plaintiff did not intend for the pictures to be distributed by the public relations company, we are at a loss to explain why the Plaintiff sent the pictures to the public relations company on two separate occasions. Moreover, any licensing fees under the circumstances would be relatively insignificant and Plaintiff's own evidence establishes that, at best, his damages are a few hundred dollars. Indeed, Just Jared's offer of judgment not only far exceeds Plaintiff's actual damages, it also exceed the minimum range for statutory damages. As a result, Plaintiff is left in an uncomfortable position of having to prove damages at a number that is not defensible, or risk having to pay Just Jared's attorney's fees.

Just Jared will defer to the Court to decide next steps. Just Jared is willing to have a second IFC or even a more formal settlement conference provided Just Jared can participate by telephone. While Just Jared would normally suggest mediation, Just Jared does not believe the potential damages in this case warrant the cost of a mediation. In the alternative, Your Honor should simply require the parties to file the Joint Report under FRCP Rule 26(f) and then issue a scheduling order in which this case is set for trial. After the exchange of initial disclosures, Just Jared will file a motion for summary judgment.

  **B. Plaintiff's Position**

Our client is an experienced celebrity photographer whose services are frequently commissioned by the likes of Sony Music Entertainment. His work is sought after and as the many emails Plaintiff turned over show he typically negotiates for a price around $500 to cover an event. Once Mr. Ferdman edits those photographs, his paying clients choose those photographs that will be available for licensing. Mr. Ferdman retains all his rights in his photographs while his clients merely select the most flattering shots to be available for licensing.

This particular evening with John Legend, was no exception. Sony, on the heels of another successful project with Mr. Ferdman asked him to cover an intimate performance of the iconic singer. Mr. Ferdman did not have much more instruction aside from the timing and the location of the event. He brought his own equipment, made decisions about composition, angles, lighting, and many other creative choices. As the emails we've produced emphasize, his clients

**MURPHY ROSEN** LLP.

**ATTORNEYS AT LAW**

The Honorable Loretta A. Preska
September 8, 2017
Page 4


(Sony) asked him to make some edits and selected 17 photographs for licensing. One person, Mica Keeney was cc'ed on the email that Mr. Ferdman sent to his clients at Sony. See Exhibit B. Contrary to the characterization of being unsolicited, Ms. Keeney's Nov. 14, 2016 10:38 PM email indicates that she asked to be included on the email exchange containing the photographs. Albeit brief, the exchange is very informative. Ms. Keeney asks if all of the photographs will go "on the wire" service as well. Mr. Ferdman replies with no and explains that only 17 images were approved by Sony for syndication. He also provides the link for approved images. Contrary to these instructions, Ms. Keeney – a purported employee of Mission uploads exactly those images that were not approved of by Sony and then, allegedly, gives them to the Defendant. To be sure, Ms. Keeney did not follow specific instructions that only 17 images that will be available for licensing. Not only were the images used by the Defendant not properly licensed, but they were selected from those photographs that were not approved by Sony.

During the IPC, Defendant's counsel conceded that there was an error made by either Mission or Sony in representing that either had the rights to give the photographs in question to Just Jared. Your Honor instructed Defendant to produce a contract between it and Mission, which has not and cannot be produced. Defendant produces only emails that indicate some informal transaction had taken place. The emails produced make it very clear that whatever rights were conferred upon Just Jared were a nullity.

As for damages, Plaintiff has produced his statements from his licensing agency, Rex. The fees Mr. Ferdman collected span less than a dollar up to $61 per use. See Exhibit F. It is important to note, that these statements are just part of lost licensing fee picture. Rex takes a large part of the licensing fee which is not accounted for in our client's statements. In calculating a lost licensing fee it is useful to inquire as to what the Defendant saved as a result of the infringement. Clearly, that number is not captured by $61 that our client pockets, but is better assessed at what Rex charges for such a photograph. The actual licensing fee is a substantially larger than the photographer's cut. Statutory damages, however, are determined through an assessment of 7 factors enumerated in *Bryant v. Media Right Productins, Inc.,* 603 F.3d 135 (2d Cir. 2010). A lost licensing fee is only one of seven factors a Court may take into consideration. Other factors include the sophistication of the Defendant and the need for deterrence.

In sum, the informal document exchange has confirmed that (1) Just Jared had no valid license nor permission to publish the photographs, (2) the photographs were timely registered with the U.S. Copyright office making statutory damages and attorney's fees available, and (3) Plaintiff has a history of licensing images through an agency. Given the number of images

**MURPHY ROSEN** LLP.

ATTORNEYS AT LAW

The Honorable Loretta A. Preska
September 8, 2017
Page 5

involved, and the availability of statutory damages and attorney's fees, the Defendant's offer of $6,400 grossly undervalues the case. We are willing to work towards a resolution, provided we have good-faith partners to negotiate with. At this point, however, it seems that the parties are too far apart.

*   *   *

The parties appreciate Your Honor's efforts and look forward to your response on how you would like the parties to proceed.

Sincerely,

Paul D. Murphy
Attorney for Defendant Just Jared, Inc.


Yaketrina Tsyvkin
Attorney for Plaintiff Steven Ferdman